IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MELONIE P. PRIEST,

    Plaintiff,

v.

FELCOR LODGING TRUST INC. d/b/a
HOLIDAY INN SELECT UNIVERSITY
CENTER, INTERCONTINENTAL HOTELS
GROUP d/b/a HOLIDAY INN SELECT
UNIVERSITY CENTER, BHR OPERATIONS,
LLC, f/k/a BASS HOTELS & RESORTS, INC.,
d/b/a HOLIDAY INN SELECT UNIVERSITY
CENTER,

    Defendants.

05cv1181
**ELECTRONICALLY FILED**

## Memorandum Opinion

This is an action for employment discrimination.  Plaintiff, Melonie Priest ("Priest") alleges that defendants, Felcor Lodging Trust Inc. d/b/a Holiday Inn Select University Center ("Holiday Inn") discriminated against her on the basis of race, age and gender, and that she was terminated in retaliation for her complaints of alleged discrimination, in violation of the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, and the Pennsylvania Human Relations Act (PHRA).  Pending before this Court is defendant's motion for summary judgment (doc. no. 28).  After careful consideration, and for the reasons that follow, this Court will GRANT defendant's motion for summary judgment.

I.    Facts

The parties have set forth more than 75 pages of material facts. The facts, many of which are disputed, but some of which are not "material", may be fairly summarized as follows. Plaintiff, who is an African-American female and is 50 years of age, was employed by defendant at the Holiday Inn Select University Center (Holiday Inn) for almost 9 years (beginning in November 1995). Plaintiff, who was hired out a female offenders program, began in an entry level position and was promoted at least four times, eventually to the Department Head level, Guest Services Manager (GSM) position in 2000. The hotel was in a cost savings mode throughout 2000-2004; however, plaintiff received a pay raise every year of her employment. In September 2004, when plaintiff was terminated, she was earning $44,000. During her employment at Holiday Inn, plaintiff's received all positive evaluations, with only a few areas that were noted as "improvable." (Doc. No. 40, page 7, paragraph 20). As Guest Services Manager, plaintiff had responsibility for management of the front desk, bell staff, and telephone switchboard personnel. Plaintiff, as the Guest Services Manager, reported directly to Steven Mitchell ("Mitchell"), who is the Director of Operations. Mitchell is responsible for revenue management, supervising the Guest Services Department, Housekeeping Department, Food and Beverage, and Maintenance.

Plaintiff alleges that Mitchell created a hostile work environment because when she reported to Mitchell that another employee from her department, Shawn Endler (caucasian male, age 30), was insubordinate and Endler told plaintiff he did not have to listen to her because: he was better than she; she was black; she was a woman; and, he reported directly to Mitchell. According to plaintiff, Mitchell did not investigate plaintiff's complaints about Endler, including

her complaint that Endler displayed hostility to the hotel's guests.

Plaintiff further alleges that Mitchell was polite to everyone but plaintiff; that he ignored plaintiff; that he undermined plaintiff's decisions; that he told her to make her own decisions, and not to ask him first; that he told her that hard work did not mean she was smart; that he hit her on the top of her head with a rolled up paper; punched her on the arm and smacked her on the back; that he gave preferential treatment to plaintiff's subordinate (Endler); that he called her "sunshine" and despite plaintiff's complaints to human resources, he continued to do so; and that he asked plaintiff if her sorority would be "throwing pigs on [his] house and painting things all over [his] house" (Plaintiff contends that Mitchell knew the group to be a mostly black sorority and his comment was made in that context).

Endler, who was the Reservations Manager up until 2003, reported to Mitchell, although plaintiff alleges that the reporting structure required Endler to report to plaintiff as the Guest Services Manager. During 2003, plaintiff had conflicts with Endler and on numerous occasions, plaintiff went to Mitchell to discuss the problems she was having with Endler. Mitchell told plaintiff a few times that she should try to work out her problems directly with Endler, and according to plaintiff, she tried to work through the issues with Endler, but once Mitchell told plaintiff in front of Endler that she was not to interact with him, plaintiff contends that it gave Endler "carte blanche" to defy plaintiff.

In November 2003, Endler resigned from the Reservations Manager position to take a position with another hotel. While defendant alleges that the Reservations Manager position was eliminated and was not filled, plaintiff denies that assertion and states that the title of Reservations Manager was eliminated, but that the responsibilities remained and were distributed

to plaintiff, Mitchell, and the reservations staff. Plaintiff contends that she performed the Reservations Manager responsibilities for about five months, and she requested, but was denied the title of Reservations Manager. The parties dispute whether the position was actually eliminated.

Sometime in May, 2004, the hotel posted a new Revenue Manager position, a position which plaintiff alleges was posted internally on May 18 but not until after the company offered the job to Endler (who was an outside applicant) as early as April. While the parties agree the plaintiff was on the interview team that interviewed Endler for the Revenue Manager position, plaintiff claims that she told Mitchell she was interested in the Revenue Manager position and that Mitchell told her that she was not qualified for the position (because she lacked systems knowledge) and that the Revenue Manager position would be a demotion and that she would make less money. According to plaintiff, Endler was hired for the position of Revenue Manager, despite her objections. However, the parties agree that Endler was not paid as much as plaintiff and that he was not a Department Head, as was plaintiff.

Sometime between February and May of 2003, defendant was required to cut overall expenses in the hotel through a series of Austerity Measures, which affected all managers, including plaintiff. Many of the managers were frustrated by these cutbacks because they were required to assume additional duties of the positions that were eliminated.

Defendant contends that at the end of 2003, Mitchell was informed by Andy Duymovic, Regional Director of Operations at the time, that the GSM position would be eliminated from the 2004 due to cutbacks. Plaintiff disputes that contention and contends that the only documentary evidence provided that the Regional Director instructed Mitchell to eliminate plaintiff's position

was a note prepared by Mitchell in response to plaintiff's discrimination claim.

In support of her failure to promote claim, plaintiff claims that she was not promoted into the positions of Revenue Manager and Reservations Manager. While defendant contends that the Reservations Manager position was a lower position that plaintiff's GSM position because it was not a Department Head Position, plaintiff disputes that contention and states that defendant's job positions and reporting structure were "always changing." Again, while defendant contends that the Revenue Manager position was a lower position than plaintiff's GSM position because it had a lesser salary by $10,000, plaintiff disputes that contention as stated.

Plaintiff also claims that, while she received training prior to her promotion to the GSM position, she was denied further "career advancement training." Defendant disputes that allegation and counters that she attended at least 19 in-house training programs during her time as the GSM, and she was sent to numerous training seminars, including seminars in Chicago and the Poconos.

While the parties agree that plaintiff requested but was denied the opportunity to shadow Mitchell, the reasons for that denial are disputed. Plaintiff contends that only Endler received training opportunities greater than plaintiff, and that he was permitted to operate the computer system within several departments, while plaintiff was only given access to her department's system.

Between August 2003 and May 2004, plaintiff made several complaints, allegedly including complaints of discrimination, to Lynn Schultz ("Schultz"), the hotel's Human Resources Manager. Schultz kept a record (though potentially not complete) of complaints lodged by plaintiff. Also, defendant provided a 1-800 number for registering employee

complaints, but plaintiff never called the 1-800 number.

Plaintiff alleges that she made a complaint of "racial problems" to Human Resources in September, 2003, and defendant determined to eliminate her position two months later. Defendant disputes that contention and states that plaintiff made a non-specific complaint about racial tensions in the hotel, and that defendant did not eliminate plaintiff's position in November 2003, nor did they make any determination to do so.  The fact remains that plaintiff was not terminated until, September, 2004, one year after the alleged complaints about "racial problems."

When plaintiff was terminated from her employment with defendant in September, 2004, she was told that her position was being eliminated for budgetary reasons.  According to defendant, the decision was made to eliminate the position of GSM and replace it with a Guest Services Supervisor, a lower position.  According to plaintiff, the decision was made to do something about the "Melonie issue," and even though corporate was recommending that defendant take plaintiff through a progressive discipline process, defendant terminated plaintiff's position and suggested she apply for a "temporary" position.

While defendant alleges that the position of GSM was never replaced after it was eliminated, and plaintiff seems to agree, she contends that the responsibilities of the position were given to Endler, even though, she alleges, plaintiff had at least one higher performance review than Endler, as well as a college degree.

Plaintiff alleges that defendant engaged in a pattern and practice of promoting black employees to certain positions and then reorganizing, eliminating, or renaming the position, and then demoting and discharging the affected employees.  Plaintiff alleges that Cornelius Nesbitt (black male) was moved from one position to another, but she does not dispute defendant's

statement that Nesbitt was involved in a personal relationship with the controller of the hotel and therefore could not report to her. Plaintiff also alleges that Debra Mills (black female and plaintiff's "significant other") was denied the opportunity to apply for a financial position and instead was promoted to the Director of Housekeeping, but defendant contends that because she is plaintiff's significant other and would have been reporting to plaintiff, her position was moved. Plaintiff also stated that other employees, including Dave Farr, Earl Eggleton, and Vernon Conners, were similarly demoted or denied promotions, or eliminated, and plaintiff states that they were replaced by white individuals. However, she provides no affidavits from these employees or other evidence to support her assertions.

## II.   Standard of Review

Summary judgment under Fed.R.Civ.P. 56©) is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. School Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir.2001) (citations omitted). In deciding a summary judgment motion, the court must "view the evidence ... through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's

burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.) *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party ).

**III.    Discussion**

In analyzing claims for discrimination/retaliation under the ADEA, Title VII, and the PHRA, we apply the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this scheme: (1) plaintiff bears the burden of establishing a prima facie case of discrimination; (2) the burden of production then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action; (3) if defendant meets its burden of production, plaintiff must prove by a preponderance of the evidence that defendant's proffered reason was a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-508 (1993).

To establish a prima facie case of age discrimination, plaintiff must show that: (1) she is forty or older; (2) she is qualified for the position in question; (3) she suffered an adverse employment decision; and (4) she was replaced by a sufficiently young person or sufficiently younger persons were treated more favorably so as to create an inference of discrimination. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995); *Berndt v. Kaiser Aluminum & Chem. Sales, Inc.*, 789 F.2d 253, 257 (3d Cir. 1986)(citing *Massarsky v. General Motors Corp.*, 706 F.2d 111, 118 (3d Cir. 1983)).

To establish a prima facie case of racial or gender discrimination, plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for her position; and (3) she suffered an adverse employment action or was discharged "under conditions that give rise to an inference of unlawful discrimination." *Geraci v. Moddy-Tottrup, Int'l Inc.*, 82 F.3d 578, 580 (3d Cir. 1996)(quoting *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

To establish a prima facie case of retaliation, plaintiff must demonstrate that: "(1) she

engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia, et al.*, — F.3d —, 2006 WL 2492256 (3d Cir. 2006)(quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).

Although the parties dispute whether plaintiff has established a prima facie case of the various forms of discrimination, we will assume for the sake of argument that she has.[1]  As such, the burden shifts to defendant to proffer a legitimate, nondiscriminatory reason for the adverse

---

[1]This Court agrees with defendant that plaintiff has failed to show that she suffered an adverse employment action with regard to her claims for failure to promote and failure to train, because the position she was denied was one that paid less than her position, and because plaintiff has not shown, first, that she received less training than any other employee, and second, how any such lack of training adversely affected her career advancement.  *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1299 (3d Cir. 1997); *Cardenas v. Massey,* 269 F.3d 251, 263-64 (3d Cir. 2001) (an adverse employment action is one that "alters the employee's compensation, terms, conditions or privileges of employment, deprives him or her of employment opportunities or adversely affects his or her status as an employee"). Simply because Endler was permitted to train on a computer system upon which he had previous knowledge or that Endler was permitted to "shadow" Mitchell while plaintiff was not, is not sufficient to show that plaintiff suffered an adverse employment action because there is absolutely no evidence that plaintiff's alleged lack of computer training altered her status as an employee.  Because plaintiff has failed to show that these actions were adverse employment actions, she has failed to set forth a prima facie case on her claims for failure to promote and failure to train, and the *McDonnell Douglas* analysis ends here.
   Furthermore, plaintiff's claim for retaliation appears to lack a necessary causal nexus.  Even if, assuming for the sake of argument, she engaged in the protected activity of claiming racial discrimination ("racial problems") in September, 2003, plaintiff was not discharged until September, 2004, approximately one year after the alleged complaints.  As the United States Court of Appeals for the Third Circuit has stated, "temporal proximity alone will be insufficient to establish the necessary causal connection when the temporal relationship is not 'unusually suggestive.'" *Cardenas v. Massey*, 269 F. 3d 251, 264 (3d Cir. 2001) (quoting *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)).  Even though the Court is inclined to agree with defendant, that plaintiff has failed to set forth a prima facie case of discrimination based upon retaliation, the Court will proceed with the *McDonnell Douglas* analysis as it relates to plaintiff's retaliation claim and her wrongful termination claim (to the extent plaintiff alleges wrongful termination).

employment action.  *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)(citing *McDonnell Douglas*, 411 U.S. at 802).

Defendant's stated reason for plaintiff's termination was that her position was eliminated as a result of financial cutbacks.  This Court finds that defendant has proffered legitimate non-discriminatory reasons for plaintiff's termination.  *See*, *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254 (1981)("defendant need not persuade the court that it was actually motivated by the proffered reasons").

Thus, under the final prong of the *McDonnell Douglas* analysis, the burden shifts to plaintiff to produce sufficient evidence to withstand summary judgment on the issue of pretext.  *See McDonnell Douglas*, 411 U.S. at 802.  Plaintiffs must point to some evidence, direct or circumstantial, from which a fact-finder could reasonably either (1) disbelieve defendant's articulated legitimate reasons or (2) believe than an invidious discriminatory reason was more likely than not a motivating or determinative cause of defendant's action.  *See Fuentes*, 32 F.3d at 764; *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 523 (3d Cir. 1992)(citation omitted).  In other words, plaintiff must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in defendant's proffered legitimate reasons such that a "reasonable fact-finder could rationally find them unworthy of credence and hence infer that the proffered nondiscriminatory reasons did not actually motivate" defendant's action.  *Fuentes*, 32 F.3d at 764-765 (quoting *Ezold*, 983 F.2d at 531).  Another way to establish that discrimination was more likely than not a cause of the employer's action is to show that the employer has treated more favorably similarly situated persons without the protected class.  *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998)(citing *Fuentes*,

32 F.3d at 765).

In her response to the motion for summary judgment regarding retaliation, plaintiff argues that defendant terminated her in response to her "complaints" of discrimination. In support thereof, plaintiff claims that defendant made the decision to terminate her two to three months after her first record "mention" of race discrimination. The facts above, however, establish that plaintiff was terminated approximately one year after her alleged complaints. The length of time between her alleged complaints and her termination does nothing to support her claim that her termination was a pretext for retaliation, nor does it do anything to establish a causal nexus between the alleged complaints and her termination. *See John v. E.I. DuPont de Nemours & Co.*, 60 F. Supp. 2d 289, 297 (periods of ten months have been found to be insufficient to create an inference of causation on their own). Plaintiff simply presents no evidence from which a rational fact finder could infer that her termination was a pretext for retaliatory motives.

Moreover, as for plaintiff's claim for wrongful termination (to the extent her complaint alleges wrongful termination) on the basis of her race, age and gender, she again fails to establish any inconsistencies or contradictions in defendant's proffered reason for her termination. While plaintiff continues to argue that Endler was treated more favorably in support of her claims for failure to train and failure to promote, because this Court has already held that these claims do not constitute adverse employment actions (see footnote number one), any claims for discrimination on the basis thereof necessary fail and these allegations can not support a claim for wrongful discharge. Plaintiff has presented no evidence supporting her claim that her termination was a pretext for discrimination, because she has not shown that she was discharged while other non-protected employees were retained, or that defendant's stated reason for her

termination (budgetary cutbacks) was a sham. In fact, upon her discharge, defendant actually suggested that she apply for "temporary" position, and this fact further undermines her argument.

Viewing the facts in the light most favorable to plaintiff, this Court finds that she has failed to establish sufficient evidence from which a reasonable fact-finder could rationally find that the defendant's articulated reasons for its employment action were unworthy of credence, or that the decision to terminate her was the result of any discriminatory or retaliatory motive. Where a plaintiff is unable to show weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in defendant's reasons for its action, summary judgment is required. *See Fuentes*, 32 F.3d at 756.

Further, plaintiff's claim for harassment (hostile work environment) is similarly unconvincing. In order to establish a claim for hostile work environment, plaintiff must establish that: (1) she suffered intentional discrimination because of her protected status; (2) the discrimination was "pervasive and regular"; (3) she was adversely affected by the discrimination; (4) the discrimination would adversely affect a reasonable person of the same protected status; and (5) that respondeat superior liability applies. *See Kunin v. Sears Roebuck & Co*, 175 F.3d 289, 293 (3d Cir. 1999)(citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990)). Further, the work environment must be shown to be objectively hostile or abusive and the plaintiff must have perceived it as hostile or abusive. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993). Courts must consider all of the circumstances, including, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Plaintiff contends in support of her claim for hostile work environment that she was treated in a demeaning and unprofessional manner by Mitchell; that Mitchell changed the reporting structure because Endler and plaintiff did not get along; that Mitchell told plaintiff to communicate with Endler only through Mitchell; that Mitchell ignored or dismissed plaintiff when she tried to converse with him; that Mitchell told her hard work did not mean she was smart; that he called her "sunshine"; that Mitchell hit her on the top of her head with rolled up paper, punched her on the arm, and smacked her on the back; and, that Mitchell showed preferential treatment to Endler.  These allegations do not rise to the level of an "objectively hostile or abusive" work environment, nor would a reasonable person of the same protected status be adversely affected.  Moreover, plaintiff has failed to establish that these general allegations somehow demonstrate intentional discrimination on the basis of plaintiff's protected status (female/black/over 40).  All that plaintiff can show on the facts presented is that Mitchell attempted (perhaps somewhat unprofessionally) to act as a go-between during a personality conflict between Endler and plaintiff.  Plaintiff has produced no evidence, other than her own conclusory allegations, that these actions, or any other alleged actions, constitute a hostile work environment.  Although it appears that plaintiff perceived that she was not shown appropriate respect by Mitchell, she points to no evidence linking any alleged harassing conduct to her age, race or gender.  For all these reasons, plaintiff's claims for "harassment"/hostile work environment fails.

Plaintiff also claims that defendant has a pattern and practice of promoting black employees to limited management positions, either eliminating or renaming the position, and then discharging the affected employees, again lacks the necessary evidence to support her

14

allegations.  Plaintiff lists several employees, including Cornelius Nesbitt, Debra Mills, Dave Farr, Earl Eggleton, and Vernon Conners, allegedly in support of her claim.  However, as defendant emphasizes, and this Court agrees, plaintiff's own explanations of reasons for defendant's employment actions negate her claim regarding a pattern or practice of race discrimination.  For example, Nesbitt was demoted because he was involved in a personal relationship with the controller of the hotel and could not report to her; Debra Mills was "denied the opportunity to apply for a financial position and was steered instead to Housekeeping," because she is plaintiff's "significant other" and would have had to report to plaintiff; and, Earl Eggleton's position was eliminated due to budgetary reasons and his responsibilities were given to a white woman - however, he was subsequently rehired.  Plaintiff's allegations and the explanations she provides regarding these other employees do nothing to establish a pattern and practice of racial discrimination.

     Finally, pending before this Court is plaintiff's motion for leave to amend the complaint (doc. no. 42) to add a cause of action under 42 U.S.C. § 1981.  This Court will deny the motion to amend because amendment of the complaint would be futile since plaintiff acknowledges that the elements of a cause of action under Title VII and § 1981 are the same and that any amendment "does not alter the facts or issues before the [C]ourt, only the remedies to which plaintiff may be entitled."

     For all these reasons, defendant's motion for summary judgment (doc. no 28) will be granted, and plaintiff's motion for leave to amend the complaint (doc no. 42) is DENIED.

An appropriate order will follow.

                                              s/Arthur J. Schwab
                                              Arthur J. Schwab
                                              United States District Judge

cc:    All counsel of record